# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

05

Fidencio M. Jimenez
Plaintiff / Petitioner

Versus

Michael Chartoff, Secretary of Home Land Security; Steven J. Farginarson ,
District Director of The Bureau of Citizenship and Immigration Services,
Boston Massachusetts, Et al,
Defendants

RECEIPT #
AMOUNT $250
SUMMONS ISSUED Y
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK Fom
DATE 7/13/05

## CIVIL ACTION NO. 05 11482 NG

Fidencio M. Jimenez, 43 Bellevue Street, Lawrence, Massachusetts, 01840

1

# United States District Court
# District of Massachusetts

Fidencio M. Jimenez,
Plaintiff,                05   11482   NG

-versus-

Michael Chertoff, Secretary of Department of Home Land Security;  Steven
J. Fanginarson,  Boston District Director of the Bureau of Citizenship and
Immigration Services;  et al..;
Defendants

---

## Motion  To Restore and Reinstate  Petitioner's
## Due Process  Rights & Declaratory Fact Findings of Petitioner
## Qualification for Naturalization

**COMES NOW, FIDENCIO M. JIMENEZ,** Respondent/Petitioner, Pro-

se in the above captioned matter respectfully moves this Honorable Court for

De Novo Hearing  in the above matter to grant the relief herein requested on

the above styled cause.  In support thereof the Respondent avers as follows:

### -I-

### JURISDICTION

This  Honorable  District  Court  has  Jurisdiction  over  this  matter

pursuant to  8 U.S.C. Sec. 1421(c) ; U.S. Const. Amend. V, XIV.

## ESTABLISHMENT OF JURISDICTION

"The party asserting jurisdiction has the burden of providing jurisdiction ..." FRCP 12(b) (1). This is NOT a petition requesting citizenship from this Court. Rather, seeking restoration of the most fundamental value of the U.S. Constitution, "Due Process Right" which applies to all "persons" within the U.S. territories, at any stage of any kind of proceedings.

The U.S. Constitution requires that:

" (n)o person shall ... be deprived of life, liberty, or property, without **due process of the law**" U.S. Const. amend. V. It also provides " nor shall any State ... Deny to any Person within its jurisdiction the equal protection of the laws " U.S. Const. amend. XIV

The Fifth Amendment entitles aliens to due process of law in deportation proceedings. (See Zadvydas v. Davis 533 U.S. 678, 121 S.CT. 2491, 2501, 150 L. Ed. 2d 653 (2001). Patel v. Zemski 275 F.3d 299 (3rd Cir.2001).

" The Due Process Clause requires that aliens threatened with deportation are provided the right to a full and fair hearing, and due process requires ... a reasonable opportunity to present evidence. See Sanchez-Cruz v. I.N.S. 255 F.3d 775 (9th Cir. 2001).

In another precedent case the Ninth Cir. Court of Appeals, in Cano-Merida v. INS, 2002 WL 31628292 (9th Cir., Nov.22, 2002), held that the

immigration Judge (IJ) denied the petitioner due process by failing to provide him with a full and fair hearing and a reasonable opportunity to present evidence, and that the petitioner was prejudiced by this denial of due process."

**8 U.S.C. Sec. 1421(c)** provides District Court with jurisdiction in case in which Petitioners had exhausted administrative review, and also the administrative petition for review entered by Petitioner had been delayed for more than 120 days. Petitioner has exhausted administrative review, and Petitioner's Appeal is now delayed for over 120 days.

Sec. 1429 does not divest this District Court of jurisdiction granted under Sec. 1421(c ). In Grewal v. Ashcroft, 301 F. Supp. 2d.692, 696(N.D. Ohio 2004) the court Declared that:

> "**Section[1429] simply has no bearing on the district court's jurisdiction** to review the administrative denial of a naturalization application of an alien against whom removal proceedings have been initiated".

In Ngwana v. U.S. Attorney General, The U.S. District court noted that:

**If, Section 1429 divested district courts of jurisdiction to review denials of naturalization applications, INS could effectively circumvent the congressionally mandated de novo judicial review of naturalization decisions simply by initiating removal proceedings pursuant to 8 U. S. C. Sec. 1229**." (40 F. Supp. 2d at 321-22).

Section 1421 (c ) provides:

> "A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a ) Of this Title, **may seek review of such denial before the U.S. District Court for the district in which such person resides** in accordance with chapter 7 of Title 5. Such review shall be de novo, and **the court shall make its own findings of fact and conclusions** of the law and shall, at the request of the petitioner, conduct a hearing de novo on the application. (8U.S.C. Sec.1421(c ).

This Statute requires administrative review of naturalization application before seeking judicial review.   However, Petitioner had exhausted such review and had resided in Lawrence, Massachusetts for the past 15 years.

These and much more other evidence unequivocally had demonstrated that this Honorable Court has jurisdiction in this matter and therefore this matter should be accepted by this Court.

## -II-

## ISSUES PRESENTED FOR REVIEWS

I.     Petitioner's Application for Naturalization was denied based on error.

II. The Bureau of Citizenship and Immigration Services failed to notify Petitioner of decision on application.

III. The Bureau of Citizenship and Naturalization Services failed to answer Petitioner's Administrative Appeal N-336

IV. Petitioner's Establishment of Prima Facie Eligibility and Qualification Naturalization, but for the pendency of the in error removal proceedings.

## FACTS AND PROCEDURAL HISTORY

1. Respondent is a native of the Dominican Republic who was lawfully admitted to the United States on 1991.

2. Respondent had been living in The Commonwealth of Massachusetts since 1991. He is married with a United States citizen and has fathered four U.S. citizen children.

3. Petitioner and his family operates several businesses and real estate properties such as "Cash Plus, Inc. I; II," "Park Street Auto Sales, Inc." , "First Class Realty, Corp." "Broadway Professional Center"

4. On July 21st, 1999 the Petitioner was arrested, and charged for money laundering, and further **released for proceedings on a one hundred thousand dollar unsecured bond.**

5. On September 25, 2000, Petitioner was sentenced to thirty months at a "**Minimum Security Institution**"; a fine of five thousand dollars; forfeiture of fifteen thousand dollars; a five thousand dollar fine and was allowed by presiding Honorable Chief Judge William G. Young to "**Self Report**" on December 11, 2000.

6. On June 17, 2002, the Petitioner completed his terms of imprisonment. Upon, his release, Petitioner was rearrested by INS and detained in custody of the Service. The Respondent was subsequently released by an Immigration judge under a ten thousand dollar bond. Respondent is still under the particulars of the bond and has not violated any of the conditions set henceforth therein.

7. Petitioner's application for citizenship was **filed prior to his arrest and conviction**, on July 19, 1999 and interviewed by INS on December 06, 2000.

8. On an unknown date, Respondent's N-400 application for naturalization was denied under error pursuant to the recommendation of the Naturalization Examiner.

## Summary of the Citizenship Interview

On December 06, 2000 Petitioner was interviewed by former INS in Boston, MA. The examiner at said hearing told Petitioner, that;

> "Mr. Jimenez, your criminal record had precluded you from getting naturalized. Your lack of good moral character, precludes naturalization due to your several convictions. You will receive our decision by mail in this application, there is nothing further to discuss in your case"

The examiner's new allegations concerning the pettiner, were contested by him without success. The examiner first learned of the money laundering charges (then pending) in this interview with the Petitioner which were then **still in pending in criminal proceedings**.

According to what he revealed at the time, several "convictions" presented to him as his bore the name of a Mr. Isola (not the petitioner's) and were, in fact not the petitioner's but nonetheless, the examiner erroneously concluded that they were convictions belonging to the petitioner and that was enough to predetermine the outcome of the petitioner's interview.

## ARGUMENT OF THE CLAIMS

### Issue I:  Petitioner's Application for Naturalization was denied based on Error.

The criminal record used to determine Petitioner's qualification for naturalization was NOT Petitioner's criminal record. The BCIS' examiner erroneously used the criminal record of an individual named EDWARD ISOLA. Mr. Isola is known to Petitioner as an individual he pressed charges against in the Lawrence District Court for cashing a bad check at his store for $15,000 and in somehow this record ( Mr. Isola's) ended up in Examiner hands as belonging to the Petitioner. The record used to deny Petitioner's application for naturalization, does not bear Petitioner name, date of birth, address, social security number or Petitioner's finger print data.

Petitioner claims that the Immigration Examiner denied him the opportunity to rebut such information which he was not allowed to discuss and that he was   prejudiced by the Immigration Examiner of due process, thus in violation of the V;  XIV amendments of the United States Constitution, also See Merida v. INS, 2002 WL 31628292(9th Cir Nov. 22, 2002)

The BCIS' examiner fell below a minimal standard of reasonable fairness. Petitioner was legally handicapped by Immigration Examiner, who acted in contravention of the Administrative Procedures Act, the Immigration and Nationality Act and the United States Constitution.

Petitioner is now seeking that this Honorable Court restore and reinstate Petitioner's rights;

"The restoration of Due Process is due at any stage of deportation proceedings, **even after deportation had occurred**" See, Josue Leocal v. John Ashcroft 124 S. Ct 1405; L. Ed 2d 76 (US Supreme Court Nov. 9, 2004).

The BCIS alleges the following convictions:

convicted for larceny by false pretense and attempting to commit a crime in April 23, 1996 and sentenced to 9 months in the House of corrections;

convicted of leaving the Commonwealth without supporting minor children and violation of support order on July 9, 1996 and sentenced to 2 1/2 years in the House of Corrections and to pay a restitution for $23,263.00;

convicted of money laundering and sentenced to 30 months in the US Bureau Of Prisons alleges by Immigration .

Petitioner WAS NOT at any time convicted of anything at the time of the interview. Immigration CAN NOT prove or corroborate that Petitioner, at the time of the interview, was ever charged with any crime other than the then pending money laundering charge. This information on money laundering was provided to the Immigration Examiner at the time of the interview, however he was not yet convicted in federal court at that time. See Exhibit "A" and compare with notice of denial)

The above convictions were refuted by the petitioner to Immigration Examiner at interview, however the opportunity to be heard was denied.

This deny not solely constitutes a violation of the V and XIV amendments of the U.S. Constitution but, also the Immigration statute that states that:

> **"Petitioner shall be permitted to inspect the record of proceeding which constitutes the basis for the decision ..."**
> **8 C.F.R. Sec.103.2 (16)**

This opportunity to be heard should be restored and reinstated by this court in order to meet the foremost fundamental standard of due process of the U.S. Constitution.

## Issue II:  The Bureau of Citizenship and Immigration Services
## Failed to Notify Petitioner of Decision on Application.

The Bureau of Citizenship and Immigration Services failed to apply a basic standard of review of Petitioner's application for citizenship but also, failed to notify Petitioner of decision on such application.  Thus, denying him the right to appeal and challenge allegations that would change the result.

Despite, th e fact  that the BCIS was informed of Petitioner's new address of by certified mails by Petitioner, and also had notified the BCIS of the termination of the service of his counsel, the BCIS had never notified the Petitioner of it's decision on application for naturalization. **Such**

**indisposition of Immigration toward Applicant constitutes a deprivation of Petitioner's Due Process Rights** in violation of amends V and XIV of the U.S. Const. in an open and defiant violation to the U.S. Constitution, violating Petitioner's "Due Process Right" which should be fully restored by this Honorable Court.

The Immigration statute requires that a chance to be heard and reopen applicant/petitioner's application to amend or correct any error be given to the petitioner if:

> **"The notice was sent to an address other than the address on the application or petition, or the notice of representation, or that the applicant or petitioner notified the Service, in writing, of a change of address or change of representation subsequent to filing and before the notice was sent and the Service's notice was not sent to the new address" (See 8 C.F.R. Sec. 103.2(iii) ).**

Petitioner asserts that he had informed the BCIS of new address and the termination of his lawyer, however, the BCIS failed to notify Petitioner of the decision on application for naturalization and a chance to change the result was never given to Petitioner. **Petitioner claims that without the erroneous record of another individual's record of convictions being used against him at the time of his interview, the likelihood he would now be naturalized was great but, for the denial of an opportunity to provide evidence to corroborate that indeed, the criminal record in use was not his.**

In a precedent case the Ninth Cir. Court of Appeals, in Cano-Merida v. INS, 2002 WL 31628292 (9th Cir., Nov.22, 2002), held that:

" ... the immigration judge (IJ) denied the petitioner due process by failing to provide him with a full and fair hearing and a reasonable opportunity to present evidence, and that the petitioner was prejudiced by this denial of due process."

Petitioner contends that the solely fact that Immigration neglected and erred in not informing him of the result of his application for naturalization constitutes denial of "Due Process Right" in its entirety and that caused him great consequences by putting under deportation proceedings.

The Immigration's statute requires that Petitioner have given an opportunity to rebut wrongful information of which he is not aware of and quote:

"If the decision will be adverse to the applicant ...based on derogatory information considered by the Service and of which the applicant or petitioner is unaware, he/she shall be advised of this fact and offered an opportunity to his/her own behalf before the decision is rendered..." (See 8C.F.R. Sec. 103.2 (i)

Such opportunity was denied to Petitioner when the Service failed to notify him about the decision taken on his application for naturalization. (See Exhibit "B").

Immigration statute's goes even further:

> "... applicant or petitioner be given notice of the general
> nature of the information and an opportunity to offer
> opposing evidence" (See 8 C.F.R Sec. 103.2 (iv)

After Petitioner had been submitted to so much abuse of power, he is now seeking to have this Court to restore and reinstate all legal rights mandated under the provisions of the U.S. Constitution.

## Issue III: The Bureau of Citizenship failed to answer Petitioner's administrative Appeal N-336.

The Bureau of Citizenship and Immigration Services had also failed to answer Petitioner's Administrative Appeal N-336. Filed by the Petitioner on June 22, 2002, in accordance with Sec. 336 of the INA and requires before seeking judicial review. (See Exhibit "C"). The fact that the BCIS did not answer the N-336, after Petitioner's had posted payment of filing fee of $195.00 and after submitting the evidence needed to discover the error and information that would change the result of his application, **constitutes Due Process denial on its most unfair shape and form.**

Petitioner had been denied the opportunity to be heard and to change the result of decision on application. The fact that a fee has been requested by BCIS in order to accept the filing of such appeal and the fact that it was paid

by Petitioner, such action demand demands an answer from Immigration, either way.   The **8 U.S.C.S Sec. 1421** requires that before anybody requested   a judicial review, one have to exhaust administrative review. Such review was exhausted by Petitioner without further result from the BCIS. This petition has no been withheld by any prior administrative or judicial proceeding.

**The Immigration statue requires that Petitioner receive an answer from the BCIS within 120 days of delayed**, (8 U.S.C. Sec.1421). BCIS never answered Petitioner's appeals, thus by, failing to raise up any claim of statutory period to file an appeal, required by Immigration statute, (8 U.S.C. Sec.1252b ( c ) (3).

The recommendation made to the Immigration District Director by the Immigration Examiner to exclude Petitioner's application for naturalization was predetermined by this one by not looking at Petitioner's real criminal record, and his recommendation was based on deliberated errors, and insensitive bureaucracy.

Certainly Fruit of the poisonous Tree Doctrine can be applied to this matter. "Once the three is poisoned then the fruit of the tree is likewise poisoned or tainted and may also not be used". One thing had led to the other one, first it was denial in error of Petitioner application, followed up by deportation proceedings. The recommendation made by the BCIS' Examiner to the District Director to deny Petitioner's application for naturalization was based on erroneous information, which had poisoned the whole application process and ended up placing petitioner in deportation proceedings.

Those violations and errors committed by the BCIS can only be amended or remedied by fully restoring and reinstating Petitioner's due process rights as demanded by the United States Constitution.

### Issue IV:  Petitioner's Establishment of Prima Facie Eligibility  And Qualification Naturalization but,  for the pendency of the, in error, removal proceedings.

Petitioner's one single count conviction standing alone does not warrant his deportation. Petitioner admits that after his BCIS interview he was convicted in Federal Court of one single count of Money Laundering.  However, for immigration purposes this conviction cannot be grounds for deportation. The judgment which controls in similar immigration matters centers on " the amount money laundered" by Petitioner necessary to include the Petitioner under a deportation category.   BCIS bears the burden to proof that the amount laundered exceeds $10,000.00 Dollars.   **BCIS has failed to demonstrate that indeed, the amount laundered by Petitioner exceeds $10,000.00 Dollars. Petitioner's conviction for the same reason is NOT a deportable AGGRAVATED felony** (See, Chowdhury v. INS 249 F. 3d 970, 9th Cir) (See Exhibit "D")

In Ocampo-Duran v. Ashcroft 9th Cir. Ruled:

> " where the judgment is not clear and convincing evidence that the immigrant had been convicted of an aggravated felony, it shall not serve for immigration purposes as a conviction. (254

F.   3d   1133.   also   see,   INA   Sect.   (a)(2)(iii); Sec.1101(a)(43)(d)(m)Woodby v. INS 17 L Ed 2d 362).

However, the Immigration statute requires that the petitioner be "OUTSIDE" of the five years period of residence in the United States order to be excluded from been naturalized;

> "An applicant for naturalization bears the burden of demonstrating that, <u>during the statutory prescribed period</u>, he or she has been and continues to be a person of good moral character" 8 CFR 316.10(1).

Petitioner states that he had resided in the Country for over 15 years in compliance with such statute. It was clear that the intention of Congress in enacting this statute was that at least each legal resident of the United States, despite their human frailties could accomplish five years of good behavior, otherwise just a few people would be able to meet this standard.  Also, **in evaluating good moral character, courts have recognized that the United States does nor requires perfection in our new citizens, nor does the law require virtue approaching sainthood.**

The standard of good moral character for naturalization purposes, is that a **petitioner's character must measure up to that of the average citizen in the community** in which resides.   In making this determination, wide discretion is vested in trial judge. (See Exhibit "E").

The Immigration's statute sets up a time frame before applying for naturalization and in such period of time requires that petitioners show moral's fruits. Quoting:

> "Immediately preceding the date of filing his application for naturalization has resided continuously after being admitted lawfully for permanent residence within the U.S. for at least Five years" (8 U.S.C.A. Sec. 1427).

And with more particularity it is defined within Sec. 316(a)(3) referring only to show good moral character during the statutorily prescribed period. And quote:

> "...during all the period referred to in this subsection has been and still is a person of good moral character, attached to the principles of the Constitution of the U.S., and well disposed to the good and happiness of the United States"

Good moral character is made coextensive with the Five year period of residence. Petitioner had accrued over 15 years of residence in the United States, instead of Five.

> In Gatcliffe v. Reno the District court had ruled that: " **It was improper for Immigration and Naturalization Services (INS) to deny alien's naturalization based solely on his CONVICTIONS OUTSIDE the five-year statutory period**"

And further more, the judge recommended him for citizenship **"without hesitation"** (See, 23 F. Supp.2d 581. D Virgin Islands, 1998).

Despite his lengthy criminal carrier OUTSIDE the time frame Gatcliffe case was reminded and he was able to be naturalized.

In another similar case. In Marcantonio v. United States the U.S. Court of Appeals also ruled that:

"**It is not permissible** to base denial of naturalization on commission of crimes PRIOR TO FIVE-YEAR period specified by statute, since effect of such condition which it does not contain. Nationality Act Sec. 307(a), 8 U.S.C.A. Sec. 707(a).

In a similar case in Ngwana v. Attorney General the district court went even more than a simple declaratory relief after recognizing that Ngwana's due process rights were violated by INS. Despite the pendency of removal proceedings against the applicant the **District Court ordered the INS to grant naturalization to Mr. Ngwana**. (See, 40 F. Supp. 2d 319, 322) (D. MD. 1999).

Understanding that the burden is on naturalization petitioner to establish good moral character only during five-year period and not earlier and that statutory requirement has been complied by this Petitioner. However, Petitioner is seeking that this Court restore and reinstate his "Due Process Right" to continue naturalization process, instead of naturalization through this Court.

The judicial review granted by the U.S. Congress to district courts confers to them to make theirs own findings and determinations. This implies that this Honorable Court can effectively determine if the decision taken by BCIS was just and properly. If this Court finds that its decision was unjust and improperly taken, this Court has congressional authority to stop deportation proceedings and remand this case for further Immigration review and or make its own recommendation on Petitioner qualification for naturalization.

## Petitioner's Previous Fact Findings of Good Moral Character by this Court

Petitioner claims that the fact that he was granted a **non-secured** bond to attend criminal proceedings being a non-citizen; the fact that he was ordered by sentencing Judge (Hon. Chief William J. Young ) to **self report** to the Bureau of Prisons; the fact that he was recommended to be incarcerated in a minimum security institution (no fence); and the fact that he was granted early termination of supervised release; and the issue of a letter of recommendation by U.S. probation officer stating his good conduct, and the fact that **he had complied with all terms and conditions imposed to him by this Honorable Court**, constitutes compelling fact findings that indeed he was found by the sentencing court to be a "person of good moral character" requires for naturalization, despite of his conviction.

## Rehabilitation and good factors

Petitioner was NOT charged or indicted for this offense (plead guilty to an

information only). Petitioner had successfully served the term of his sentence. Petitioner had not engaged in any other criminal offense. Petitioner is a successful businessman and is very active and involved with his community.  Petitioner has grounded ties in the United States.  He had fathered four children all born in the United States; Petitioner is married to U.S. citizen; Petitioner has several parcel of real estate and three businesses. Petitioner is a paralegal student at Middlesex Community. Petitioner had been registered at the U.S. Selective Service. Petitioner had been in the Country for over15 year. Petitioner is reformed and presently is of good moral character and hereby expresses great remorse for the offense he had committed against the people of the United States and show not further intention to violate any law of the United States.

## C o n c l u s i o n

It had been cleared that Petitioner is not seeking naturalization by this Court. But, full restoration and reinstation of his "DUE PROCESS RIGHTS" that where taken away from him by Immigration Examiner by denying him the opportunity to be heard  and cleared himself from erroneous  allegations. That NONE of the convictions USED to deny Petitioner's application for

naturalization were Petitioner's convictions. That the Petitioner's present and ONLY conviction for money laundering had occurred after the application for naturalization was denied. That BCIS had failed to demonstrate that the amount of currency laundered by Petitioner exceeds $10,000.00 Dollars. That this conviction standing alone does not warrants Petitioner's deportation.

What controls in Immigration's matters is the judgment, and Petitioner's judgment DOES NOT show the alleged amount laundered needed to determine if the amount laundered exceeds $10,000.00 dollars. Immigration has not met its burden by any at all evidence that is clear and convincing to demonstrate that Petitioner's present and only conviction fall within the purview of Section (101)(a)(43) of the Act., despite the fact that the charge of an aggravated felony has been sustained. (See Woodby v. INS 17 L. Ed 2d 362)

That BCIS erred in finding that Petitioner lacked good moral character by using the WRONG CRIMINAL RECORD. Petitioner's Due Process Rights should be completely restored and reinstated in accordingly with the Constitution of the U.S. Amends V; XIV.

BCIS had failed to notify Petitioner on application decision, thus, denying him the opportunity to appeal and change the result.

BCIS had failed to answer Petitioner's administrative appeal N-336 requires by Immigration statute.

It had been shown that fundamental errors have been committed and that individual litigant had been bound by failures of BCIS which would result in a gross miscarriage of justice, such deportation proceedings should be stopped and appropriate corrective measures taken.

# R e l i e f    S o u g h t

WHEREFORE, Petitioner on this matter prays that this Honorable Court grant the following relief in the best interest of justice without prejudice:

A.  Accept Jurisdiction pursuant to U.S. Const. Amend V, XIV and 8 U.S.C. Sec. 1421(c).

B. Issue an injunction against The Bureau of Citizenship and Immigration Services from proceeding any further with the removal proceedings and to dismiss removal proceedings.

C. Order the reopening of application for naturalization to finalize naturalization.

D. Issue a declaratory of Fact Findings that Petitioner Fully Qualifies to Finalize Naturalization Process but, for the Pendency of Removal Proceedings.

Respectfully submitted  __/ /__  day of July 2005

By

**Fidencio M. Jimenez**
**43 Bellevue Street**
**Lawrence, Ma. 01840**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

Fidencio M. Jimenez
Plaintiff / Petitioner

-Versus-

Michael Chartoff, Secretary of Home Land Security; Steven J. Farginarson ,
District Director of The Bureau of Citizenship and Immigration Services,
Boston Massachusetts, Et al,
Defendants

## O R D E R

The Court, having examined this petition, all document and after had been
heard the parties involved in this action had concluded that, IT IS HEREBY:

**GRANTED**        **DENIED**

On the basis of:

_____

_____

IT IS FURTHER ORDERED THAT: _____

_____

SO ORDERED this ____ day of _____ 2005

_____
U.S. District Judge /

**U.S. District Court, 1 Courthouse Way, Suite 2300,  Massachusetts,  02210**

# Certificate of Srvices

I, Fidencio M. Jimenez, do hereby certify that an original copy of the "Motion to restore and reinstate Petitioner's Due Process Rights and for declaratory of fact Findings of Petioner's Qualification for Naturalization" was mailed certified, via U.S. Post Office to the following Parties:

U.S. District Court
Office of the Pro-se Clerk
1 Courthouse Way, Suite 2300
Boston, MA. 02210


BCIS
75 Lower Welden Street
Saint Albans, Vermont, 05479-0001

Bureau of Citizenship and Immigration Services
John F. Kennedy Federal Building
Government Center
Boston, MA. 02203



Respectfully submitted this _11_ day of July 2005.


By _____
Fidencio M. Jimenez
43 Bellevue Street,
Lawrence, MA. 0140

TABLE OF CASES, STATUTES, AND TOHER AUTHORITIES CITED

| Cases | Page |
|---|---|
| ZADVYDAS V. DAVIS 533 U.S. 678, 121. S.CT. 2491,2501 | 2, |
| PATEL V. ZEMSKI 275 F.3D 299 (3RD CIR. 2001) | 2, |
| SANCHEZ-CRUZ V. INS 255 F.3D 775 (9TH CIR. 2001) | 2 |
| CANO-MEDIDA V. INS ,2002, WL 31628292(9TH CIR. NOV.22) | 2 |
| GREWAL V. ASHCROFT, 301  F. SUPP. 2D, 696. | 3 |
| MERIDA V. INS, 2002, WL 31628292 | 3 |
| JOSUE LEOCAL V. JOHN ASHCROFT 124 S. CT. 1405 | 9 |
| CANO-MEDIDA V. INS ,2002, WL 31628292(9TH CIR. NOV.22 | 12 |
| Chowdhury v. INS 249 F. 3D 970, 9TH Cir | 15 |
| Ocampo-Duran v. Ashcroft  254 F. 3D 1133 | 16 |
| WOODBY V. INS 17 L ED. 2D 362 | 16 |
| GACLIFF V. INS 23 F. SUPP. 2D 581 (VIRGIN ISLAND,1998) | 18 |
| NGWANA V. INS 40 F. SUPP. 2D 319, 322, D  MD 1999) | 18 |
| WOODBY V. INS 17 L ED. 2D 362 | 21 |

Statutes

| Statute | Page |
|---|---|
| 8 USC Sec. 1421(c) | 1, |
| 8 USC Sec. 1421(c) | 2, |
| 8 USC Sec. 1429 | 3,3 |
| 8CFR Sec. 103.2 (16) | 10 |
| 8CFR Sec. 103.2 (iii) | 11 |
| 8CFR Sec. 103.2 (i) | 12 |
| 8CFR Sec. 103.2 (iv) | 13 |
| INA Sct.336 | 13 |
| 8 USC Sec. 1421 | 14 |
| 8 USC Sec. 1252b (c ) (3) | 14 |
| INA Sec.1101(a)(43)(d)(m) | 16 |
| 8 USCA Sec. 1427 | 17 |
| INA Sect. (101)(a)(43) | 21 |

Other Authorities

| Authority | Page |
|---|---|
| U.S. Const. Amend. V, XIV | 1,2,8 |
| FRCP 12(1) | 2, |