UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2005 NOV 16  P 3:07

U.S. DISTRICT COURT
DISTRICT OF MASS.

Fidencio Jimenez,
A #42-602-107
        Petitioner,

- v. -

Michael Chertoff, Secretary of the
Department of Homeland Security;
Steven Farginarson,
District Director, BCIS, Department of
Homeland Security; et. al.
        Respondents

CIVIL ACTION 05-11482 NG

## MEMORANDUM OF REASONS IN SUPPORT OF PETITIONER'S MOTION TO ENTER DEFAULT JUDGMENT

Jeffrey B. Rubin
Rubin and Mann, P.C.
One Center Plaza, Suite 203
Boston, MA  02108
617-367-0077

I    Introduction

Fidencio Jimenez (Petitioner) complied with the rules of summons and service as of September 9, 2005. Respondents have failed to answer his complaint within 60 days of service. Mr. Jimenez has established a claim to relief. Mr. Jimenez therefore asks this Honorable Court to enter the default of the defendants for failure to plead or otherwise defend as provided by the Federal Rules of Civil Procedure Rule 55.

Pursuant to that default, Mr. Jimenez asks this Court to remand his case to Citizenship and Immigration Services for reconsideration of his naturalization application, which was unjustly denied. Mr. Jimenez also asks this Court to order his

1

release from immigration detention pending reconsideration of his naturalization application.

II    Statement of relevant facts and procedural history

Mr. Jimenez is a native and citizen of the Dominican Republic. See Exhibit A, Notice to Appear. He was admitted to the United States at San Juan, Puerto Rico on December 31, 1990 as a lawful permanent resident. Id. Mr. Jimenez has lived in Massachusetts since September of 1991. Id. He is married to a U.S. citizen, and is the father of four U.S. citizen children. See Exhibit B, Certificate of Marriage; Exhibit C, Certificate of Naturalization of Ybelka Yamira Ortiz; Exhibit D, birth certificates of Mr. Jimenez's four United States citizen children. Mr. Jimenez and his family operate several businesses and real estate holdings. See Exhibit E, Business Licensures for Mr. Jimenez.

On July 16, 1999,[1] Mr. Jimenez filed an N-400 application for naturalization with the U.S. Citizenship and Immigration Services (CIS), which is part of the Department of Homeland Security. See Exhibit F, Notice of Action on N400 Application. On March 16, 2000, Mr. Jimenez pled guilty in the U.S. District Court for the District of Massachusetts to money laundering in violation of 18 U.S.C. 1956.[2] See Exhibit G, U.S. District Court for the District of Massachusetts criminal docket. He was sentenced on September 25, 2000 to thirty months in a federal minimum security institution, and also fined and ordered to pay restitution. Id. Mr. Jimenez was allowed by Chief Judge Young to self

---

[1] Respondent CIS erroneously stated in its denial of Mr. Jimenez' application that he filed on July 19, 1999. Mr. Jimenez relied on that date in his motion, but the Notice of Action makes it clear that his naturalization application was actually filed July 16, 1999.

[2] Mr. Jimenez has asked counsel to clarify that when he submitted his *pro se* motion, he confused the date of conviction with the date he was ordered to report to serve his sentence. Based on that confusion, he mistakenly stated that he had never been convicted of anything at the time of the naturalization interview. This is incorrect, and Mr. Jimenez apologizes for his error. Notwithstanding this fact, however, Mr. Jimenez argues that he is still eligible for relief and that his case should be remanded to CIS for reconsideration.

report to the Federal Correctional Institution at Fort Dix in December of 2000, which he did. *Id.*

On December 6, 2000, prior to the date scheduled for him to report to Fort Dix, Mr. Jimenez appeared for his naturalization interview before a naturalization examiner from the Boston office of the former INS, now the U.S. Citizenship and Immigration Services (Respondent CIS). See Exhibit F. The examiner erroneously stated to Mr. Jimenez that he had been convicted in Massachusetts of larceny, false pretense, attempt, leaving the Commonwealth without supporting minor children, and of violation of a support order, and that therefore his naturalization application was pretermitted for inability to establish good moral character. See Exhibit H, undated decision denying N400 application. The convictions the examiner referred to, however, were in fact not those of Mr. Jimenez, but of an Edward Isola. See Exhibit I, criminal docket sheets for Edward Isola. Mr. Jimenez was not allowed an opportunity to rebut or discuss this evidence, or to proceed with the interview at all. Instead, the naturalization examiner stated that his criminal record had precluded him from being naturalized, that there was therefore no need for an interview, and told him that he would receive a written decision in the mail.

Mr. Jimenez waited to receive a written decision of the denial of his naturalization from the former INS. Mr. Jimenez fired Attorney James Dragon in February of 2001, and asked him to make sure that all further communications from the former INS came directly to Mr. Jimenez. On May 4, 2001, Mr. Jimenez sent the former INS received a letter urgently requesting an update on the status of his application. In that letter, he provided his new mailing address. On May 24, 2001, INS responded by providing Mr.

3

Jimenez with an address in Boston to contact with his inquiry. See <u>Exhibit J</u>, INS letter to Mr. Jimenez dated May 24, 2001. On June 2, 2001, Mr. Jimenez wrote to the address provided and asked again for an update on the status of his application. See <u>Exhibit K</u>, Mr. Jimenez's letter to INS dated June 2, 2001. In that letter, he notified the former INS of his change of address. *Id.* He also notified them that he had fired his attorney of record, and that all future communications should come directly to him. *Id.* Still he received no written decision.

Mr. Jimenez was eventually placed in removal proceedings. See <u>Exhibit A</u>, Notice to Appear. He learned through the efforts of his deportation defense attorney, John Perez that his naturalization application had been denied by the former INS on a date unknown. See <u>Exhibit H</u>. On April 22, 2003, Mr. Jimenez wrote to the district director of INS to inquire about the decision in his case and to request a naturalization hearing. See <u>Exhibit L</u>, certified mail and return receipts. Receiving no response, Mr. Jimenez filed an N-336 Request for Hearing along with a *pro se* "Motion in Support of N-400 Petition to Reopen and Permit Applicant's Naturalization" to request reopening of his case under 8 CFR 1240.1(a) on October 24, 2003, along with the appropriate filing fee. See <u>Exhibit M</u>. Mr. Jimenez has never received a decision on his request from Respondents.

On July 13, 2005, Mr. Jimenez filed a *pro se* "Motion to Restore and Reinstate Petitioner's Due Process Rights & Declaratory Findings of Petitioner Qualification for Naturalization" with this Court, thereby commencing this case. Based on that motion, the docket clerk of this Court has designated the action as a Petition for Naturalization Hearing. See <u>Exhibit N</u>, Petition for Naturalization Hearing.

Mr. Jimenez sent summonses to the heads of the Department of Homeland Security and the Bureau of Citizenship and Immigration Services action via the U.S. Marshall Service on September 9, 2005. Mr. Jimenez also served the Office of General Counsel as required under 6 CFR 5.42a on August 18, 2005. See <u>Exhibit O</u>. As of November 10, 2005, no answer had been made by Respondents to this complaint.

Based on the earlier decisions of CIS, the immigration court in Boston, Massachusetts found that Mr. Jimenez was not a U.S. citizen, and ordered him removed on September 20, 2005. Mr. Jimenez timely appealed that decision to the Board of Immigration Appeals. See <u>Exhibit P</u>. His appeal is currently pending.

III    <u>Defaults can and should be entered because Respondents have failed to answer Mr. Jimenez' complaint within the time allowed by law.</u>

When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default. Fed.R.Civ.P. 55(a). The United States, an agency of the United States, or an officer or employee of the United States sued in an official capacity, shall serve an answer to a complaint within 60 days after the United States attorney is served with the pleading asserting the claim. Fed.R.Civ.P. 12(a)(3)(A).

Mr. Jimenez served summons on the Office of General Counsel as required under 6 C.F.R. 5.42a on August 18, 2005. Mr. Jimenez also sent summonses to the heads of the Department of Homeland Security and the Bureau of Citizenship and Immigration Services via the U.S. Marshall Service on September 9, 2005. It is now more than 60 days after the attorney for the United States, the Office of General Counsel for the

Department of Homeland Security, was served. To date, no answer had been made by Respondents to this complaint.

IV    Mr. Jimenez has established a claim or right to relief as required under FRCP 55(e) for entry of default.

Mr. Jimenez has established a claim or right to relief as required under FRCP 55(e) for entry of default, because Mr. Jimenez has established through his initial *pro se* filings that he is entitled to have his case remanded to CIS for hearing.

First, Mr. Jimenez has clearly established that Respondent CIS, which has replaced the former INS for purposes of this action, violated his due process rights in their adjudication of his naturalization application. Mr. Jimenez has shown that Respondent CIS relied on the criminal record of a person other than himself to determine that he was not of good moral character. Mr. Jimenez has further shown that Respondent CIS did not provide him with the opportunity to offer opposing evidence as required in 8 C.F.R. 103.2(iv). Respondent CIS also failed to notify Mr. Jimenez of their decision on his N-336 and his motion to reopen seeking a hearing pursuant to 8 U.S.C. § 1447(a).

The sole reason which Respondent CIS gave for its denial of Mr. Jimenez' application naturalization was that they believed he was unable to show good moral character. The finding of Respondent CIS that Mr. Jimenez lacked good moral character was fatally poisoned by their consideration of the criminal record of another man, and by their failure to allow Mr. Jimenez to rebut that erroneous information.[3] See INA 101(f).

---

[3] Mr. Jimenez verbally informed the naturalization examiner of his conviction for money laundering at the time of his interview. However, Mr. Jimenez did not and does not believe that that conviction fell within the aggravated felony definition under INA 101(43)(D), because he does not believe CIS ever established that the amount of the funds involved exceeded $10,000. CIS never allowed him to see what evidence they based that conclusion on, or allowed him an opportunity to rebut such evidence. Mr. Jimenez asks for the

6

The conduct of Respondent CIS in this case falls below even a minimal standard of fairness. Mr. Jimenez feels strongly that his rights to due process under the 14th Amendment of the U.S. Constitution and under the statutes and regulations of the United States have been violated.

Second, Mr. Jimenez has shown that at the time he applied to naturalize, and for the five years preceding the date of application, he was in fact eligible for naturalization. The requirements for naturalization are set out in INA 316(a), 8 U.S.C. 1427. When he applied for naturalization, Mr. Jimenez provided evidence to Respondent CIS that he met all of the requirements of that statute, and of the attendant regulations in 8 C.F.R. 316.[4] CIS was apparently satisfied as to all but one requirement.

At the time of application, and for the five years preceding application, Mr. Jimenez asserts that he was eligible for naturalization. See INA 316, 8 U.S.C. 1427. Mr. Jimenez' sole conviction for money laundering occurred outside of the five years preceding application. Mr. Jimenez argues therefore that the conviction did not occur within any periods referred to in INA 316, and that CIS is barred from relying solely on acts which occurred outside the statutory period. See Gatcliffe v. Reno, 23 F. Supp. 2d 581, 583, 585 (D.V.I. 1998)(holding that acts outside the statutory period must be considered together with any rehabilitation which occurred afterward). In such a case, an alien seeking naturalization is entitled to present evidence of rehabilitation to rebut the charge that he is not of good moral character. Id.

Third, Mr. Jimenez argues that he is currently eligible for naturalization. Mr. Jimenez did not and does not believe that his conviction fell within the aggravated felony

---

opportunity to present evidence and argument on this question when this case is remanded to CIS for reconsideration.

[4] Mr. Jimenez stand prepared to resubmit that evidence to this Honorable Court upon request.

7

definition under INA 101(43)(D), because he does not believe CIS ever established that the amount of the funds involved exceeded $10,000, allowed him to see what evidence they based that conclusion on, or allowed him an opportunity to rebut such evidence. Mr. Jimenez asks for the opportunity to present evidence and argument on this question when this case is remanded to CIS for reconsideration. Mr. Jimenez will present evidence upon remand that he is and has been a person of good moral character for all relevant periods, and that he meets all of the other requirements for naturalization.

Finally, Mr. Jimenez has done his utmost to comply with the rules governing judicial review of his case. Mr. Jimenez made diligent but unsuccessful attempts to ascertain the status of his application. After eventually learning that his application had been denied on a date unknown, Mr. Jimenez pursued the administrative appeal process set out in 8 U.S.C. 1447. Respondent CIS has to this date never responded to Mr. Jimenez attempt to appeal, and has failed to respond to his requests for information. Mr. Jimenez must therefore assume that his N-336 Request for Hearing was denied on a date unknown, and has therefore filed this petition in U.S. District Court pursuant to 8 U.S.C. § 1421(c).

V.   Mr. Jimenez has exhausted his administrative remedies.

The law and the regulations require an applicant for naturalization to seek administrative review of a naturalization denial before seeking judicial review under INA § 310(c). See 8 U.S.C.A. § 1421(c); 8 CFR § 336.9(d). Mr. Jimenez has made a good faith effort to seek administrative review of his case, in spite of the fact that he was never served with notice of the denial of his application, has never been able to ascertain when he was actually denied, and has never received any kind of response to the filing of his N-

336 Request for Hearing. Mr. Jimenez submits, therefore, that he has exhausted his administrative remedies to the extent required by law.

VII   Conclusion

Mr. Jimenez therefore asks this honorable court in the interest of justice to remand his case to Citizenship and Immigration Services for reconsideration of his naturalization application, and to order his release from immigration detention pending reconsideration of his naturalization application.

Respectfully submitted,

_____
Jeffrey B. Rubin
Rubin and Mann, P.C.
One Center Plaza, Suite 203
Boston, MA 02108
617-367-0077

9